UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO VALENZUELA, JR., | No. 2:14-cv-1446-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from October 17, 2011, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 20.)  Thereafter, plaintiff filed a reply brief.  (ECF No. 21.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on March 30, 1987; completed high school (with special education classes); is able to speak, understand, read, and write in English; and does not have past relevant work.[2]  (Administrative Transcript ("AT") 19, 28-29, 89, 103, 200, 202.)[3]  On October 17, 2011, at the age of 24, plaintiff applied for SSI, alleging that his disability began on August 26, 1991, and that he was disabled due to a cleft palate, hearing impairment, speech impairment, and learning disability.  (AT 12, 89, 103, 184, 201.)[4]  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on January 15, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 12, 24-64.)

In a decision dated February 26, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from October 17, 2011, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision.  (AT 12-20.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 22, 2014.  (AT 1-3.)  Thereafter, plaintiff filed this action in federal district court on June 17, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

---

[2] Plaintiff worked as a seasonal general laborer in cherry packing in May of 2008, but that work did not last long enough to qualify as substantial gainful activity.  (AT 29-30, 202.)  Subsequently, plaintiff did some occasional landscaping work, which likewise did not amount to substantial gainful activity.  (AT 30.)

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order.  The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[4] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed.  20 C.F.R. § 416.335.

## II. ISSUES PRESENTED

Plaintiff has raised the sole issue of whether the ALJ failed to properly consider the opinion of the consultative examining speech pathologist.

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[5] At the first step, the ALJ concluded that plaintiff had not

---

[5] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

engaged in substantial gainful activity since October 17, 2011, the date that plaintiff's SSI application was filed. (AT 14.) At step two, the ALJ found that plaintiff had the following severe impairments: speech delay and depression. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to work involving simple, routine, and repetitive tasks with occasional public contact. He can communicate sufficiently to speak and be understood but would have some speech impediment that would prevent work with jobs such as telemarketing over the phone or with some device because the clients may not be [able] to understand the claimant. However, in face-to-face interaction the claimant could communicate sufficiently to be understood with a level as defined in the DOT as level 1, 2, or 3. He should avoid concentrated exposure to environmental irritants such as fumes, odors, smoke, and dusts.

(AT 15.)

At step four, the ALJ found that plaintiff had no past relevant work. (AT 19.) However, at step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age,

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (Id.) In particular, the VE testified that plaintiff could perform the representative occupations of assembler and packing line worker. (AT 19-20.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from October 17, 2011, the date that plaintiff's SSI application was filed, through February 26, 2013, the date of the ALJ's decision. (AT 20.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

As noted above, plaintiff contends that the ALJ failed to properly consider the opinion of the consultative examining speech pathologist, Pauline Nash. Plaintiff argues that the ALJ, without explanation, did not incorporate certain purported limitations in Ms. Nash's opinion, in particular, that plaintiff would have difficulties with comprehending, remembering, and following instructions, and in interacting with others. (See, e.g., ECF No. 17 at 10.) That argument is unpersuasive.

On January 14, 2012, Ms. Nash personally examined and diagnosed plaintiff with a severe receptive and expressive language deficit, noting that his speech intelligibility was impacted by his significant nasal emission, but that other features of his voice (rate, volume, pitch, and quality), fluency, and respiration were unremarkable. (AT 264-65.) Significantly, Ms. Nash opined that plaintiff could hear conversation speech within normal limits and that he had normal pragmatic language skills (such as initiating and maintaining a topic, responding to greetings, and maintaining eye contact). (Id.) That determination is consistent with Ms. Nash's finding that plaintiff was pleasant, cooperative, and able to attend to the testing environment. (AT 263.) Thus, while plaintiff undoubtedly has a speech impediment that could present difficulties with jobs requiring significant public contact and telephonic communication, Ms. Nash's opinion actually shows that plaintiff is able to interact with others sufficiently to perform work such as an assembler or packing line worker, as found by the ALJ.

Additionally, although Ms. Nash generically and somewhat vaguely suggested that students with plaintiff's test scores *may* have difficulties with various academic activities, including following directions for projects, remembering homework assignments, reading

5

comprehension, and using analogical reasoning for problem solving, she provided no assessment regarding the *degree* to which these activities would be affected; let alone opined, as plaintiff posits, that plaintiff would be unable to follow or remember directions for simple, routine, repetitive work occurring outside the more rigorous academic context. (AT 265, ECF No. 17 at 10.) Simply put, Ms. Nash's opinion contained no concrete functional limitations regarding plaintiff's ability to comprehend, remember, and follow instructions for the ALJ to reject.[6]

By contrast, the consultative examining psychologist, Dr. David Richwerger, who personally evaluated and performed intelligence/memory testing on plaintiff a few days later on January 19, 2012, assessed several concrete mental functional limitations relevant to those domains. (AT 269-76.) Dr. Richwerger diagnosed plaintiff with a phonological disorder; an adjustment disorder with depressed mood (mild to moderate) and secondary to health-related concerns; and borderline intellectual functioning (scoring at the higher end of the borderline range). (AT 274.) He observed that plaintiff was calm, stable, and cooperative, and that although a developmental articulation problem was noted, plaintiff's verbal response time was "within normal limits, not delayed, and not diminished." (AT 272.) Plaintiff's understanding of instructions was within normal limits for simple tasks, only demonstrating occasional difficulty with complex tasks, and his thought processes were rational, but somewhat concrete. (Id.) Plaintiff scored in the low average range on most memory tasks. (AT 274.)

In terms of specific functional limitations, Dr. Richwerger opined that plaintiff had slight to moderate impairment in his ability to perform detailed and complex tasks; no impairment in his ability to perform simple and repetitive tasks; slight impairment in his ability to perform work activities on a consistent basis; no impairment in his ability to perform work activities without special supervision; slight to moderate impairment in his ability to complete a normal workday or workweek without interruption from a psychiatric condition; slight impairment in his ability to understand and accept instructions from supervisors; slight impairment in his ability to interact

---

[6] Plaintiff's contention that his interpretation of Ms. Nash's opinion is consistent with his own subjective allegations is unpersuasive, because the ALJ found plaintiff not entirely credible (AT 16), and plaintiff has not submitted any substantive briefing or argument challenging the ALJ's credibility analysis on appeal.

with coworkers and the public; no impairment in his ability to maintain regular attendance in the workplace; and slight impairment in his ability to deal with the usual stresses encountered in competitive work.  (AT 275.)  Those functional limitations are plainly consistent with, and support, the ALJ's RFC for essentially simple, repetitive tasks and occasional public contact.

Plaintiff also suggests, apparently in reliance on Dr. Richwerger's opinion, that a VE would likely have testified that "a worker who could not finish a normal workday or workweek will certainly not keep his job very long." (ECF No. 17 at 13.)  However, that argument borders on the frivolous and mischaracterizes the record, because Dr. Richwerger never stated that plaintiff could not finish a normal workday or workweek.  To the contrary, Dr. Richwerger opined that plaintiff would only have *slight to moderate* impairment in his ability to complete a normal workday or workweek without interruption from a psychiatric condition and *no impairment* in his ability to maintain regular attendance in the workplace.  No reasonable ALJ could have interpreted Dr. Richwerger's limitations to be disabling.  In any event, the Ninth Circuit has already held that moderate mental limitations are not sufficiently severe so as to require vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (involving an assessment that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.").

Plaintiff further argues that the ALJ should have limited plaintiff to a quieter environment at DOT noise levels 1 and 2.  (ECF No. 17 at 12.)  In this case, the ALJ, in light of plaintiff's speech impairment, limited plaintiff to DOT noise level 3 (involving moderate noise) and imposed additional limitations related to telemarketing or similar work over the phone/other devices, even though neither Ms. Nash nor Dr. Richwerger specifically assessed such limitations. (AT 15.)  Tellingly, plaintiff points to no medical source that opined that plaintiff should be further limited to DOT noise levels 1 and 2.  Instead, it appears that the proposed level 1 and 2

noise restriction is offered by plaintiff's counsel, who is of course not qualified to offer a medical opinion concerning such an additional restriction.

In sum, the ALJ did not reject any of the concrete limitations offered by either Ms. Nash or Dr. Richwerger. The ALJ gave substantial weight to their opinions in formulating plaintiff's RFC. The RFC is consistent with plaintiff's ability to understand and respond to questioning in a reasonably intelligible manner at the administrative hearing. Additionally, although plaintiff's previous seasonal work at a cherry packing plant in 2008 did not last long enough to amount to substantial gainful activity, plaintiff stated that he stopped doing that work because he had gotten laid off due to lack of work, but that he "got along good with coworkers." (AT 201, 270.) The RFC is also bolstered by plaintiff's own testimony that he would have no problems with a job where he did not have to be around a lot of people and "did the same thing sort of over and over." (AT 49.)

## V. CONCLUSION

For the reasons outlined above, the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 20) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: June 16, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE